STATE, Respondent, v. QUINN, Appellant

(13 N. W.2d 50.)

(File No. 8622.   Opinion filed February 11, 1944.)

**C. S. Acker,** of Aberdeen, for Appellant.

**Geo. Mickelson,** Atty. Gen., **Chas. P. Warren,** Asst. Atty. Gen., and **Elmer Thurow,** State's Atty., of Aberdeen, for Respondent.

RUDOLPH, J.   The appellant was convicted in Brown County of the crime of grand larceny.   The decisive issue in so far as this appeal is concerned relates to the question of the corroboration of certain confessed accomplices to the alleged crime.

One Mary Simpson related the facts upon which this charge is based, substantially as follows:

Sometime after 12 o'clock on the night of August 6th, 1942, she went to a place known as the "Happy Hour", a night club which was being operated by the defendant and located about one and a half miles southwest of Aberdeen. Prior to going to the night club this witness testified she had been drinking beer in a beer parlor in Aberdeen. Upon arrival at the night club she indulged in a stronger drink described in the evidence as "Coca and whiskey." Mary testified that while at the night club the defendant told her that another patron of the place, one Goetz, had in his possession about $100 and that if she would obtain it from Goetz she could keep a half thereof; that the defendant told her that he would furnish all the liquor needed to get Goetz drunk but according to Mary's testimony Goetz was entirely drunk at the time the defendant made this statement. Mary testified.

"Q. This man Goetz sat at the table with you? A. No.

"Q. Not at any time? A. No.

"Q. You had several drinks together? A. Not with him.

"Q. Not with Mr. Goetz at all? A. No.

"Q. You didn't try to get him to drink any liquor at all? A. No, I didn't."

Sometime later in the evening or earlier in the morning when all were intoxicated, according to the testimony of this witness, she, Goetz, and two other men by the name of Lewis and Benson got into Lewis's car and started for Aberdeen. Lewis and Goetz and the witness sat in the front seat of the car and during this ride the witness obtained the bill fold of Goetz, which contained $120. Later some argument ensued over the possession of this bill fold and money and just what happened thereafter is not entirely clear from the evidence except that it is clear that the witness subsequently gave to Lewis $50 of the money she had obtained from Goetz and told him to give it to the defendant. Lewis testified substantially as follows:

That on the evening in question he was at the night club and heard the defendant talking to Mary Simpson and heard the defendant tell her that "Goetz had a bunch of

money on him." Lewis further testified concerning the trip to Aberdeen and that later in the evening Mary Simpson gave him the $50 and told him to give it to Quinn but that he kept the money and "laid it away for safe-keeping". The victim, Goetz, testified to his visit to the night club, the trip to Aberdeen, and the loss of his money and further testified that while at the night club he saw Mary Simpson talking to the defendant. Benson testified that while at the night club he saw Mary Simpson and the defendant talking to each other.

■ SDC 34.3636 provides: "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

As disclosed by the above recital of the testimony, the only evidence other than that of Mary Simpson and Lewis tending to connect the defendant with the commission of this crime, is the testimony of Benson and Goetz which went only to the extent of showing that at some time during the evening Mary had talked to the defendant. We think it clear that such testimony is not sufficient to connect the defendant with the commission of this offense. In all probability, Mary talked to others shortly before the offense was committed. Obviously, the fact that Mary talked to the defendant or to others standing by itself, would connect neither the defendant nor those to whom she talked, with the commission of this crime. While this court has adopted a rather liberal rule relating to the amount and type of evidence necessary to corroborate an accomplice, it has never gone so far as to hold that evidence simply showing that the accomplice talked to the person charged a short time before the commission of the offense, was sufficient in itself to connect such person with the offense. See State v. Phelps, 5 S. D. 480, 59 N. W. 471; State v. Hicks et al., 6 S. D. 325, 60 N. W. 66; State v. Mungeon, 20 S. D. 612, 108 N. W. 552; State v. Kruse, 24 S. D. 174, 123 N. W. 71; State v.

Walsh, 25 S. D. 30, 125 N. W. 295; State v. George, 39 S. D. 513, 165 N. W. 248; State v. Drapeau, 45 S. D. 507, 189 N. W. 305; State v. Johnson, 50 S. D. 29, 208 N. W. 166; State v. Kaiser, 58 S. D. 132, 235 N. W. 366.

■■ It is apparent, we believe, that both Mary Simpson and Lewis were accomplices in the commission of the alleged offense. The state so concedes in its brief when it states: "Two of the State's witnesses were Mary Simpson and Bill Lewis both of whom according to their own testimony were concerned in the commission of the crime. At the time of the trial, Mary Simpson was confined in jail and Bill Lewis had been arrested in connection with the crime."

Both of these witnesses being accomplices, we are of the opinion that the testimony of one cannot be regarded as corroboration of the testimony of the other within the meaning of our statute requiring that the testimony of an accomplice must be corroborated. In our opinion, a holding permitting one accomplice to corroborate another would be contrary to the spirit and intent of our statute. Such is the general holding under similar statutes. State v. Williamson, 42 Conn. 261; State v. Gillum, 39 Idaho 457, 228 P. 334; Fryman v. Commonwealth, 225 Ky. 808, 10 S. W.2d 302; People v. Vollero, 108 Misc. 635, 178 N. Y. S. 787; Hanna v. State, 30 Okla. Cr. 354, 235 P. 928; Orr v. State, 124 Tex Cr. R. 252, 61 S. W.2d 490.

■ There being no corroboration of the testimony of the accomplices tending to connect the defendant with the commission of the alleged offense, we are of the view that the conviction cannot stand. The judgment appealed from is reversed.

WARREN, P.J., and POLLEY, and ROBERTS, JJ., concur.

SMITH, J., not participating.